IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **MARY DOBBINS KATTERHEINRICH,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **CIVIL ACTION NO.:** _____ |
| v. ) | |
| ) | |
| **AL-RAZAQ COMPUTING SERVICES,** ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW, Mary Dobbins Katterheinrich ("Ms. Dobbins"), Plaintiff in the above-styled action, files her Complaint against Al-Razaq Computing Services, Defendant, and, in support thereof, shows as follows:

### INTRODUCTION

Mary Dobbins was a Project Lead at Al-Razaq Computing Services ("Al-Razaq" or "Company") at the time the events made the basis of this Complaint took place. Ms. Dobbins was hired by Al-Razaq on May 1, 2011 when Al-Razaq was awarded Contract NNM11AA30C for Acquisition and Business Support Services ("ABSS-1"). Ms. Dobbins was a highly-valued liaison between employees of Al-Razaq and National Aeronautics and Space Administration ("NASA"), as evidenced by several glowing evaluations from NASA professionals and in-house performance

1

appraisals.

On November 9, 2015, NASA released a draft Request for Proposals ("RFP" or "Request") to the public for the ABSS follow-on Contract NNM16534124R, ("ABSS-2"). After the final Request for ABSS-2 was officially released on February 16, 2016, Al-Razaq and Adventus Technologies, Inc. created a joint venture called "A Squared Joint Venture" ("A2JV") to prepare a proposal to secure this follow-on contract opportunity.

Because of her prior experience and knowledge of federal acquisition regulations, Ms. Dobbins knew that Al-Razaq needed to implement a firewall that separated people who were or had been working on the ABSS-1 contract from the people who would create the proposal for ABSS-2. Ms. Dobbins discussed concerns she had regarding a possible Organizational Conflict of Interest ("OCI") with several people at Al-Razaq, including Langston Hunter, who was the current ABSS-1 Program Manager and former Deputy Program Manager, and with personnel at NASA, including Ketela Helton, a Contracting Officer at Marshall Space Flight Center ("MSFC").

Despite the concerns expressed by Ms. Dobbins to Al-Razaq and to NASA regarding the company's conflict of interest, a proposal for ABSS-2 was hand-delivered to Rita James, Procurement Representative for NASA's MSFC, by Ron Lentz, Al-Razaq's former Program Manager for ABSS-1, and Langston Hunter. Mr.

Hunter commented that he was glad to be finished with the proposal as he had been working hard on it for the previous two weeks.

After an investigation, NASA's Contracting Officer Helton informed A2JV, via letter dated May 9, 2016, that its proposal was disqualified from the competition because the involvement of the two program managers in its preparation created a conflict of interest that "taints the integrity of the competition being conducted under the ABSS RFP." A2JV filed a protest with the Government Accountability Office on May 17, 2016, that was ultimately dismissed on August 23, 2016. Ms. Dobbins was terminated five business days later, on August 31, 2016, because she had successfully exposed a scheme to defraud the United States government.

## PARTIES

1.  Plaintiff Mary Dobbins is a female above the age of nineteen (19), a citizen of the United States and resident of this district and division. She is a former employee of Defendant Al-Razaq Computing Services.

2.  Defendant Al-Razaq Computing Services is a Texas corporation headquartered in Houston, Texas, and was, at all times relevant hereto, doing business in this Federal district and division.

## JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under federal law, in particular the federal FALSE CLAIMS ACT,

31 U.S.C. § 3729 *et seq* and 10 U.S.C. § 2409. In addition, the FCA itself, at 31 U.S.C. § 3732(a), specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § 3730(h).

4. This court has personal jurisdiction over Defendant as it can be found in, and is authorized to transact business in, the Northern District of Alabama.

5. Venue is proper in the Northern District of Alabama under 31 U.S.C. § 3730(h), 10 U.S.C. § 2409, and 28 U.S.C. § 1391, as Al-Razaq conducts business in this District and the acts proscribed by 31 U.S.C. § 3730(h) and 10 U.S.C. § 2409 occurred in this District.

## FACTS

6. Plaintiff repeats paragraphs 1 through 5 as if fully set out herein.

7. Al-Razaq is an operations management and business systems integration firm that provides support to commercial, city, state, federal, and other government entities.

8. According to its website, the Company offers assistance with business warehouse and data mining, financial management, acquisition management, cost estimating and analysis, cost research, business analysis, earned value management, resources management and analysis, project management, information technology, and software development and customization.

9. Ms. Dobbins began working at Al-Razaq as the Program Lead on May

1, 2011.

10. At the time of her hiring, she enjoyed an outstanding reputation for competence and integrity, having held a position with Digital Fusion Solutions, Inc., the company from whom Al-Razaq took over the original Contract for Acquisition and Business Support Services (ABSS-1), since 2005.

11. On April 30, 2015, Ron Lentz conducted a performance appraisal of Ms. Dobbins' fourth year of work. Mr. Lentz indicated that Ms. Dobbins exceeded expectations and was a valued member of the ABSS team due to her professional manner and excellent managerial skills.

12. Later that same year, on November 9, 2015, NASA MSFC's Office of Procurement released a draft Request for Proposals for a follow-on contract to the ASBB-1.

13. A few months later, on February 16, 2016, the Request for ASBB-2 was officially released.

14. Despite the OCI plan requirements, clearly laid out in Federal Acquisition Regulation (FAR) Subpart 9.505-4, Langston Hunter, the Program Manager, and Ron Lentz, former Program Manager, worked on the proposal.

15. Shanda Williams, Al-Razaq's Deputy Program Manager, who had direct access to the previous company's proprietary information, including pay rates, billing rates, and indirect rates, also worked on the proposal.

16. Because of the prior work the company performed on the ABSS-1 contract, Plaintiff became concerned that there was a conflict of interest, and discussed her concern with Langston Hunter, who was the then-current Program Manager for the ABSS-1 contract. Ms. Dobbins advised that she would research the issue further and speak to the Contracting Officer for the ABSS-1 contract, Ms. Ketela Helton, for direction.

17. On February 24, 2016, Plaintiff met with Contracting Officer Helton seeking confirmation that Al-Razaq personnel supporting ABSS-1 could not assist in any manner with the preparation of a proposal for ABSS-2. She was told that they could not.

18. Helton advised that in order for Al-Razaq to make a proposal on the follow-on contract, the government would require a firewall be implemented to separate both the information and personnel associated with the current contract from the proposal team associated with the follow-on contract.

19. At this point, Ms. Dobbins revealed to Contracting Officer Helton that the Al-Razaq's ABSS-1 Program Manager, Mr. Hunter, was working on the ABSS-2 proposal.

20. Plaintiff notified Langston Hunter (Program Manager), Shanda Williams, Deputy Program Manager, and Michelle Vanterpool, Business Lead, of the firewall requirement and informed them they would have to follow section G.2

NFS 1852.242-70 Technical Directions (SEP 1993) of base contract NNM11AA30C and submit an official, written request to Helton for approval of a firewall between the people working on the old contract and the employees writing the proposal for the new contract.

21. Neither Contract Officer Helton nor the Contracting Officer Representative, Ms. Sherry Knighten ever received an official, written request for approval of a firewall from Al-Razaq.

22. In fact, during this proposal drafting process, Al-Razaq did not, and could not, create a firewall that complied with acquisition regulations.

23. On Thursday, March 17, 2016, Langston Hunter and Ron Lentz hand-delivered the ABSS-2 proposal from A2JV to Rita James, Procurement Representative, at NASA's Marshall Space Flight Center.

24. In the course of delivering the proposal to Ms. James, Mr. Hunter commented that he was pleased to be turning it in as he had been working hard on its preparation for the previous two weeks.

25. On March 18, 2016, Contracting Officer Helton spoke to Mr. Hunter. Mr. Hunter confirmed what Ms. Dobbins had told her, namely that he had worked ten and twelve-hour days, including weekends, for the last two weeks to prepare the ABSS-2 proposal.

26. On March 14, 2016, Plaintiff received and accepted a contingent offer

of employment from A2JV. The offer informed Ms. Dobbins that Adventus Technologies, Inc. would be partnering with Al-Razaq to form A2JV for the purposes of bidding on the ABSS-2 Contract and was contingent on the contract being awarded to A2JV.

27. In the offer, Ms. Dobbins was lauded as an invaluable employee whose dedication to Al-Razaq and to the ABSS-1 Contract over the previous five years had been exemplary.

28. From March through May of 2016, Plaintiff received positive performance evaluations by various officials of NASA related to her support of the ABSS-1 contract.

29. For instance, on May 6, 2016, Peter Zorba, NASA Santa Susana Field Laboratory ("SSFL") Project Director, called Ms. Dobbins a "consummate professional." He went on to laud her work-ethic, professional opinion, dependability, and subject-matter expertise. These sentiments were echoed by the Office Chief at the Institutional Support Office of NASA, Sherry K. Fenn.

30. A few days later, on May 9, 2016, Contracting Officer Helton informed A2JV via letter that its proposal was disqualified from the competition because of its unequal access to information described in section 9.595-4 of the Federal Acquisition Regulation (FAR) – the organizational conflict of interest regulation.

31. On May 17, 2016, A2JV filed a protest of its disqualification with the

Government Accountability Office (GAO).

32. On June 16, 2016, the GAO submitted a Memorandum of Law as part of its Agency Report addressing each of the grounds of protest set forth by A2JV.

33. The GAO found that the disqualification resolved an unfair competitive advantage due to access to nonpublic, sensitive information that provided an unfair competitive advantage to A2JV, and thus, dismissed the protest.

34. On June 27, 2016, A2JV submitted additional protest grounds as a supplement to its May 17, 2016 protest, stating that the disqualification was capricious, arbitrary and unreasonable.

35. On July 7, 2016, the GAO supplemented its Memorandum of Law addressing each of the grounds of supplemental protest set forth by A2JV.

36. Again, the GAO found that the current and former program managers of the ASBB-1 Contract had access to information that provided an unfair competitive advantage.

37. On August 23, 2016, the GAO dismissed A2JV's second protest. [1]

38. Five business days later, Plaintiff was fired on August 31, 2016.

39. Plaintiff attempted to follow governmental procedures regarding the proposal and possible OCI as required by her position by notifying her employer and

---

[1] United States Government Accountability Office, *Decision*, available at: http://www.gao.gov/assets/680/679662.pdf (last visited September 26, 2017).

NASA personnel and was fired because of it.

40. Plaintiff was terminated on August 31, 2016 for false reasons.

41. Plaintiff submitted a complaint alleging unlawful reprisal to the Inspector General of NASA on November 21, 2016 that was dismissed on jurisdictional grounds on May 1, 2017.

## COUNT I
## Violation of the Retaliation Provisions of the
## False Claims Act, 31 U.S.C. § 3730(h)

42. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 41 above, as if fully set forth herein.

43. Plaintiff seeks redress for Defendant's employment practices.

44. Defendant is an employer and receives federal funds within the meaning of that term under the False Claims Act, 31 U.S.C. § 3729 *et seq.*

45. Plaintiff is an employee that engaged in lawful acts as her concerns and inquiries regarding the propriety of personnel associated with the current contract being involved in the creation of a proposal for the follow-on contract were valid and constitute protected conduct with the meaning of 31 U.S.C. § 3730(h) (the "Protected Conduct").

46. Plaintiff made numerous attempts to point out the conflict of interest to the appropriate persons at Al-Razaq and did her due diligence in confirming the conflict of interest

with Contracting Officer Helton, which she believed potentially exposed the organization to forfeiting their ability to submit a proposal.

47.     Defendant knew that Plaintiff had engaged in and was in the process of engaging in Protected Conduct.

48.     Plaintiff was terminated near, in terms of time, to when Al-Razaq learned its final GAO protest regarding the disqualified proposal was denied.

49.     The temporal relation between Defendant learning of their failed protest and Plaintiff's termination support a reasonable conclusion that the organization was aware of the possibility of litigation under the False Claims Act and other federal statutes and regulations.

50.     Plaintiff was terminated because she pointed out the OCI that ultimately resulted in the proposal submitted by A2JV being disqualified.

## COUNT II
## Violation of the Prohibition of Reprisals Provisions of
## 10 U.S.C. § 2409

51.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 41 above, as if fully set forth herein.

52.     Plaintiff is an employee of Defendant, a contractor, subcontractor, grantee, or subgrantee within the meaning of that term under 10 U.S.C. § 2409 *et seq.*

53. Plaintiff is an employee that engaged in lawful acts as her concerns and inquiries regarding the propriety of personnel associated with the current contract being involved in the creation of a proposal for the follow-on contract were valid and constitute reasonable belief that Defendant was violating a law, rule, or regulation related to a NASA contract (including the competition for or negotiation of a contract), or grant and constitute protected conduct with the meaning of 10 U.S.C. § 2409(a)(1)(B) (the "Protected Conduct").

54. Plaintiff made numerous attempts to point out the conflict of interest to the appropriate persons at Al-Razaq and did her due diligence in confirming the conflict of interest with Contracting Officer Helton, which she believed potentially exposed the organization to forfeiting their ability to submit a proposal.

55. Defendant knew that Plaintiff had engaged in and was in the process of engaging in Protected Conduct.

56. Plaintiff was terminated near, in terms of time, to when Al-Razaq learned its final GAO protest regarding the disqualified proposal was denied.

57. The temporal relation between Defendant learning of their failed protest and Plaintiff's termination support a reasonable conclusion that the

organization was aware of the possibility of litigation under the 10 U.S.C. § 2409 and other federal statutes and regulations.

58. Plaintiff was terminated because she pointed out the organizational conflict of interest that ultimately resulted in the proposal submitted by A2JV being disqualified. There was not another reason for Plaintiff's termination other than her engagement in Protected Conduct.

59. Plaintiff exhausted all administrative remedies at her disposal with respect to reprisal in submitting her complaint to the Inspector General of NASA.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that this Court enter an Order, pursuant to 31 U.S.C. § 3730(h) and 10 U.S.C. § 2409, for judgment and relief against Defendant as follows:

a) Accepting jurisdiction over this matter;

b) Declaring that Defendant engaged in conduct unlawful under 31 U.S.C. § 3730(h) and 10 U.S.C. § 2409;

c) Entering an Order requiring Defendant to reinstate Plaintiff with the same seniority status that she would have had but for the above-pled retaliation and reprisal;

d) Awarding Plaintiff her back pay, as calculated, times two;

e) Awarding Plaintiff interest on her back-pay award;

f) Awarding Plaintiff compensatory damages;

g) Awarding Plaintiff pre- and post-judgment interest as allowed by law;

h) Awarding Plaintiff all litigation costs incurred, including reasonable attorney fees; and

i) Awarding Plaintiff such other, different and further relief, including equitable, as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues triable at law.

Dated this the 25th day of October, 2017.

s/ D. Anthony Mastando
D. Anthony Mastando (ASB-0893-X32B)
Teri Ryder Mastando (ASB-4507-E53T)
MASTANDO & ATRIP, LLC
301 Washington Street NW, Suite 302
Huntsville, AL 35801
Phone:  (256) 532-2222
Fax:  (256) 513-7489
tony@mastandoatrip.com
teri@mastandoatrip.com

**DEFENDANT TO BE SERVED AT THE FOLLOWING ADDRESS:**

Heather L. Sherrod, Esq.
NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1301 McKinney
Suite 5100
Houston, TX 77010-3095